UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| JOAN G. LOZOYA, | CASE NO. 07cv2148-IEG-WMc |
|---|---|
| Plaintiff, | **ORDER:** |
| vs. | **(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS HOSPITAL CORPORATION OF AMERICA, INC. AND MOUNTAIN VIEW HOSPITAL'S MOTION TO DISMISS; and** |
| ERIC J. ANDERSON, LINDSY BLAKE, HOSPITAL CORPORATION OF AMERICA, INC., MOUNTAIN VIEW HOSPITAL, FREEMONT EMERGENCY SERVICE INC., ALEXANDRA E. PAGE, KAISER FOUNDATION HEALTH PLAN, INC., and KAISER PERMANENTE, | **(2) GRANTING PLAINTIFF LEAVE TO AMEND.** |
| | (Doc. No. 15.) |
| Defendants. | |

Presently before the Court is a motion to dismiss filed by defendants Hospital Corporation of America, Inc., and Mountain View Hospital (hereinafter "defendants"). For the following reasons, the Court GRANTS IN PART and DENIES IN PART the motion, and GRANTS plaintiff leave to amend.

**Factual Background**

The following facts are taken from plaintiff's complaint. On November 8, 2006, plaintiff Joan Lozoya fell and suffered a serious shoulder fracture. Plaintiff was seventy-four years old at the time.

She went to Mountain View Hospital in Clark County, Nevada, for medical attention. Doctors Anderson and Blake informed plaintiff she had a severe fracture of her right shoulder. They put her arm in a sling and provided medication for the pain. Plaintiff requested to see an orthopedic specialist or to be transferred to a larger hospital for orthopedic surgery. Defendants refused these requests and discharged her, recommending she seek treatment when she returned to her home in San Diego. On November 11, 2006, she sought treatment in San Diego in the emergency department of Kaiser Permanente. On November 12, 2006, Dr. Page performed surgery on her arm. Plaintiff alleges medical malpractice by the hospitals and doctors in both Nevada and California, and claims Mountain View Hospital's refusal to treat her violated federal law. Plaintiff suffered and continues to suffer from pain, emotional distress, impaired enjoyment, and loss of use of her arm.

**Procedural Background**

Plaintiff filed her initial complaint on November 8, 2007, and a first amended complaint on January 4, 2008. (Doc. Nos. 1 & 3.) On March 4, 2008, the Court granted plaintiff's motion for extension of time to serve summonses and the complaint on the defendants. On April 14, 2008, defendants Anderson and Fremont Emergency Service, Inc. filed a motion to dismiss the federal claim against them. (Doc. No. 12.) On May 28, 2008, the parties filed a stipulation to dismiss the federal claim against those defendants. (Doc. No. 26.) The Court granted this motion on May 28, 2008. (Doc. No. 27.)

Hospital Corporation and Mountain View Hospital also filed a motion to dismiss on April 14, 2008. (Doc. No. 15.) On May 16, 2008, plaintiff filed an opposition to defendants' motion. (Doc. No. 21.) On May 23, 2008, defendants filed a reply. (Doc. No. 23.) The Court heard oral argument on the motion on June 2, 2008. Kyle Cruse appeared on behalf of defendants Hospital Corporation of America, Inc., and Mountain View Hospital. Frank J. Lozoya, IV appeared by telephone on behalf of plaintiff Joan G. Lozoya.

Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. Proc. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). The Court may dismiss a complaint for failure to state a

1  claim when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim
2  which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Navarro, 250 F.3d
3  at 732 (citing Conley). In other words, a Rule 12(b)(6) dismissal is proper only where there is either
4  a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable
5  legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).

In deciding a motion to dismiss for failure to state a claim, the court's review is generally limited to the contents of the complaint. Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996); Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996); Mier v. Owens, 57 F.3d 747, 750 (9th Cir. 1995) (citing Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). Furthermore, the court is not required to credit conclusory legal allegations cast in the form of factual allegations, "unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

**Motion to Dismiss**

Defendants Hospital Corporation and Mountain View Hospital argue the Court should dismiss all claims against them.

A.   <u>Emergency Medical Treatment and Labor Act Claim</u>

Defendants argue plaintiff has not pleaded a violation of the federal Emergency Medical Treatment and Labor Act (hereinafter "EMTALA"). EMTALA established several requirements for hospitals which participate in the federal Medicare program. First, EMTALA provides that hospitals with emergency rooms must "provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . . to determine whether or not an emergency

medical condition . . . exists." 42 U.S.C. § 1395dd(a).[1] If the hospital discovers an emergency medical condition, it must provide "such further medical examination and such treatment as may be required to stabilize the medical condition" or transfer the individual. Id. § 1395dd(b). "To stabilize" means:

> to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer [or discharge] of the individual from a facility.

Id. § 1395dd(e)(3)(A); 42 C.F.R. § 489.24(b) (same).

Decisions interpreting EMTALA have emphasized it does not create a federal malpractice standard or a cause of action for medical malpractice in federal court. Rather, EMTALA only imposes the duty to screen for emergency conditions and to "stabilize" such conditions if they are discovered. Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1258 (9th Cir. 1995). The Ninth Circuit has also noted the function of EMTALA is to prevent hospitals from "dumping" patients who are uninsured and unable to pay for their emergency care. Id.; see also Jackson v. E. Bay Hosp., 246 F.3d 1248, 1254 (9th Cir. 2001). However, the statute has no requirement that the patient be a member of the class the statute is designed to protect in order to bring a claim. See 42 U.S.C. § 1395dd; Jackson, 246 F.3d at 1256 (not including patient's uninsured status in explanation of test for violation of EMTALA).

In this case, the parties agree the hospital adequately screened plaintiff and determined she had an emergency medical condition. Plaintiff argues the doctors then violated EMTALA by failing to stabilize her and treat her with the proper standard of care. Insofar as plaintiff's complaint alleges defendants improperly treated her, she has only stated a state medical malpractice claim rather than a federal EMTALA claim. (See, e.g., FAC ¶ 34.) However, plaintiff's claim that the doctors did not

---

[1] "Emergency medical condition" is defined as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in . . . serious jeopardy," to the patient's health, "serious impairment to bodily functions," or "serious dysfunction of any bodily organ or part." 42 U.S.C. § 1395dd(e)(1)(A); 42 C.F.R. § 489.24(b) (same).

1 stabilize her emergency medical condition is a cognizable claim under EMTALA.[2] See 42 U.S.C. §
2 1395dd(b) (requiring hospital to provide "such further medical examination and such treatment as may
3 be required to stabilize the medical condition"); § 1395dd(e)(3)(A) (defining "to stabilize").

4       Defendants argue that accepting the truth of plaintiff's factual allegations, defendants
5 appropriately stabilized her emergency condition by giving her a sling and medication for the pain.
6 Plaintiff argues stabilizing her condition required an "orthopedic consult and open reduction surgery
7 given the significant probability of this type of injury disrupting the vascular supply to the proximal
8 humerus along with systemic displacement." (Plaintiff's Opposition to the Motion at 7-8.)

9       On a motion to dismiss, without any factual development, it is premature to decide whether
10 the sling and painkillers constituted the treatment "necessary to assure within reasonable medical
11 probability, that no material deterioration of the condition is likely to result from or occur during the
12 transfer [or discharge] of the individual from a facility." 42 U.S.C. § 1395dd(e)(3)(A). Accordingly,
13 the motion to dismiss this claim is denied.

14 B.    <u>State Law Medical Malpractice Claims</u>

15       Plaintiff's state claims are medical malpractice claims arising under Nevada law.[3] Defendants
16 argue plaintiff's malpractice claims do not comply with Section 41A.071 of the Nevada Revised
17 Statutes, which provides:

18-20 > If an action for medical malpractice or dental malpractice is filed in the district court, the district court shall dismiss the action, without prejudice, if the action is filed without an affidavit, supporting the allegations contained in the action, submitted by a medical expert who practices or has practiced in an area that is substantially similar to the type of practice engaged in at the time of the alleged malpractice.

21 Nev. Rev. Stat. 41A.071. Because plaintiff filed her malpractice claims without including a medical
22 expert affidavit, defendants argue those claims must be dismissed pursuant to Nevada law.

23       Plaintiff argues in opposition that the medical expert affidavit requirement does not apply in

---

[2] At oral argument, defendants' counsel argued the complaint does not allege defendants failed to stabilize plaintiff's condition. Defendants focus on the language of the first amended complaint that defendants refused "to treat Plaintiff" and "fail[ed] to provide necessary and proper medical care." (FAC ¶¶ 33-34.) But the complaint does allege defendants "refus[ed] and fail[ed] to properly stabilize Plaintiff's emergency injuries." (Id. ¶ 33.) This is a sufficient allegation under Rule 8 of the Federal Rules of Civil Procedure.

[3] The parties agree Nevada law concerning medical malpractice applies to the Nevada defendants.

1  federal court. Plaintiff cites the Erie decision and a case in the Northern District of Georgia in which
2  the court declined to apply state law. Baird v. Celis, 41 F. Supp. 2d 1358 (N.D. Ga. 1999) (citing Erie
3  R. R. Co. v. Tompkins, 304 U.S. 64 (1938)). In Baird, the court held a medical malpractice affidavit
4  requirement is procedural and conflicts with Rule 8 of the Federal Rules of Civil Procedure.
5  Accordingly, it declined to apply the expert affidavit requirement. Id. at 1361-62. In response,
6  defendants cite a Third Circuit Court of Appeals decision holding New Jersey's requirement of an
7  affidavit of merit in medical malpractice cases is substantive. Chamberlain v. Giampapa, 210 F.3d
8  154, 161 (3d Cir. 2000).

9  Analysis

10  Where state law claims are brought in federal court based on diversity jurisdiction or pursuant
11  to supplemental jurisdiction, the court must choose whether to apply state or federal law. Under
12  Hanna v. Plumer, 380 U.S. 460, 470-74 (1965), the court first inquires whether a state law directly
13  collides with federal law. If there is no direct collision, the court follows Erie and applies state law
14  on substantive issues and federal law on procedural issues. Id. If there is a direct collision, federal
15  law applies. Id. In considering the substantive/procedural distinction, the Court is guided by "the twin
16  aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration
17  of the laws." Id. at 468.

18  Each federal court to consider Nevada's medical expert affidavit requirement has held
19  plaintiffs must comply with that requirement. Jones v. Neiven, No. 07-1088 JCM, 2008 WL 2074003
20  at *4 (D. Nev. May 14, 2008) (applying Nevada law and dismissing claim without prejudice, without
21  considering whether the state law applies in federal court); Estes v. So. Nev. Adult Mental Health, No.
22  04-0149 RLH, 2007 WL 1199343 (D. Nev. Apr. 19, 2007) (same); Butts v. Univ. Health Svcs., Inc.,
23  No. 05-1434 PMP, 2006 WL 1877127 (D. Nev. July 6, 2006) (briefly considering issue and then
24  applying state law). While none of these decisions discussed the choice of law issues in detail, the
25  application of state law in those cases implicitly found the affidavit requirement (1) does not collide
26  with federal law; and (2) is a substantive state law, applicable in federal court.

27  These decisions are also consistent with those of other district courts considering special state
28  requirements in medical malpractice actions. In Washington state, plaintiffs must also file an expert's

certificate of the merit of a medical malpractice claim. Federal district courts interpreting this provision have uniformly held it applies in federal court. See Gobin v. Dept. of the Army W. Regional Command Madigan Army Med. Ctr., No. C07-5677-RBL, 2008 WL 828944 (W.D. Wash. Mar. 27, 2008); Abear v. Teveliet, No. 06-5550 RBL, 2006 WL 3813560 at *3 (W.D. Wash. Dec. 21, 2006). Similarly, under California law, a plaintiff must provide notice to the doctor-defendant 90 days before bringing a medical malpractice claim. Courts considering the rule have found it applies in federal court. See Rosado v. Alameida, 497 F. Supp. 2d 1179, 1195 (S.D. Cal. 2007) (applying state law and finding amendment would not be futile because failure to comply with the requirement did not "invalidate" the proceedings under California law, but rather provides cause to discipline the "errant attorney"); Jett v. Penner, No. 02-2036 GEB, 2007 WL 715533 at *1 (E.D. Cal. Mar. 8, 2007) (same).[4] In a Ninth Circuit Court of Appeals case interpreting an older version of Nevada's medical malpractice statute, the court concluded the state's evidentiary rule regarding admissibility of the findings of a malpractice screening panel applied in federal court because it was a core component of Nevada's substantive scheme. Wray v. Gregory, 61 F.3d 1414, 1418 (9th Cir. 1995).

The medical expert affidavit requirement of Nev. Rev. Stat. § 41A.071 is similar to the other special malpractice requirements found substantive by federal courts in the Ninth Circuit. Allowing Nevada medical malpractice claims to proceed in federal court without an affidavit is likely to result in forum shopping, because a frivolous case will proceed without expert scrutiny in federal court. Moreover, the Nevada rule represents a substantive judgment that medical malpractice claims must be supported by expert testimony. See, e.g., Nev. Rev. Stat. § 41A.100. Accordingly, the requirement applies in federal court and plaintiff's state law malpractice claims must be dismissed for failure to provide the required affidavit.

Leave to Amend

Finally, the Court considers whether to grant plaintiff leave to amend and file the required medical expert affidavit. Under Nevada law, a malpractice complaint filed without the affidavit is a legal nullity and thus may not be amended. Washoe Med. Ctr. v. Second Jud. Dist. Ct., 148 P.3d 790,

---

[4] See also Hill v. U.S., 751 F. Supp. 909, 910 (D. Colo. 1990) (finding the certificate of review requirement in medical malpractice actions under Colorado law substantive).

795 (Nev. 2006). Defendants argue the Court must follow Nevada law and dismiss without leave to amend. Defendants also argue a new complaint may not be filed with an appropriate affidavit because, in their view, the statute of limitations has expired.[5]

Under federal law, leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15. Leave to amend is granted with "extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). "There are several accepted reasons why leave to amend should not be granted, including the presence of bad faith on the part of the [party seeking to amend], undue delay, prejudice to the [party opposing amendment], futility of amendment, and that the party has previously amended the relevant pleading." Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 989 F. Supp. 1237, 1241 (N.D. Cal. 1997).

The first question under Erie and Hanna is whether these rules are in direct conflict. See Hanna, 380 U.S. at 470-74. In this case, if the Court applied the rule articulated by the Nevada Supreme Court in Washoe Medical Center, plaintiff's malpractice claims would automatically be dismissed without leave to amend. If the Court applied Rule 15, it would only deny leave to amend upon a showing of prejudice, futility, undue delay or bad faith. As none of those circumstances are present and a proper affidavit would cure the defect of the pleading, the Court would grant leave to amend pursuant to Rule 15. Accordingly, the rules directly conflict.

Where federal and state law directly conflict, the Court applies federal law on procedural matters. Hanna, 380 U.S. at 70-74. The propriety of amendment is a procedural matter. The court's analysis in Burrows v. Redbud Cmty. Hosp. Dist., 188 F.R.D. 356 (N.D. Cal. 1997) is instructive. In Burrows, the court considered California's law that any amendments to a complaint adding a claim for exemplary damages must be made within two years of filing the malpractice action. The court found this rule procedural because it "was essentially a method of managing or directing a plaintiff's pleadings rather than a determination of substantive rights." Id. at 361 (citing Jackson v. E. Bay Hosp., 980 F. Supp. 1341, 1352 (N.D. Cal. 1997)).

Similarly, the Nevada rule prohibiting amendment of a complaint filed without a medical

---

[5] At oral argument, the parties agreed this issue will not arise unless the Court dismisses without leave to amend and plaintiff re-files the action at this time.

1  expert affidavit is procedural because it relates to the "managing or directing of a plaintiff's
2  pleadings." Id. Accordingly, the Court applies Rule 15 of the Federal Rules of Civil Procedure. As
3  previously noted, no reason exists for denying leave to amend at this early stage of the case.

## CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion to dismiss as to plaintiff's claim that defendants violated EMTALA by failing to stabilize plaintiff's emergency medical condition. The Court GRANTS defendants' motion to dismiss as to plaintiff's medical malpractice claims against defendants for failure to include a medical expert affidavit. The Court GRANTS plaintiff leave to amend the complaint to provide the required affidavit within **thirty days** of the date of this Order.

**DATED: June 17, 2008**

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**